James P. Krauzlis
Martin F. Casey
**CASEY & BARNETT, LLC**
305 Broadway, Ste 1202
New York, New York 10007
(212) 286-0225
Attorneys for Plaintiff                                    **ECF**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
TRAVELERS PROPERTY CASUALTY                          19 Civ.
COMPANY OF AMERICA a/s/o AgrUSA, Inc.

        Plaintiff,                                    **COMPLAINT**

    - against -

MSC MEDITERRANEAN SHIPPING COMPANY
S.A., and HAPAG-LLOYD
AKTIENGESELLSCHAFT, HAMBURG.

        Defendants.
----------------------------------------------------------------X

      Plaintiff, TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA a/s/o

AgrUSA, Inc., by and through its attorneys, Casey & Barnett LLC, as and for its Complaint,

alleges upon information and belief as follows:

### JURISDICTION

      1.     This is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure.  Jurisdiction is predicated upon 28 U.S.C. §1333 and the

provisions contained in the MSC MEDITERRANEAN SHIPPING COMPANY S.A. bill of

lading, which mandates that jurisdiction for all claims arising under its bill of lading shall be in

this district.

## PARTIES

2.      At all material times, TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA (hereinafter "TRAVELERS" or "Plaintiff") was and is a corporation organized and existing under the laws of Connecticut, with its principal place of business at One Tower Square, Hartford, Connecticut 06183 and is the subrogated underwriter of the consignments of cargo more specifically described below.

3.      At all material times, defendant, MSC MEDITERRANEAN SHIPPING COMPANY S.A.  (hereinafter "Defendants" or "MSC") was and is a corporation with an office and place of business located c/o MSC Mediterranean Shipping Company (USA) Inc., 420 5th Avenue – 8th Floor, New York, N.Y. 10018 and at all relevant times, was and is still doing business within the jurisdiction of this Honorable Court as a vessel owning common carrier of goods for hire.

4.      At all material times, defendant, HAPAG-LLOYD AKTIENGESELLSCHAFT, HAMBURG, (hereinafter "Defendants" or "HAPAG") was and is a corporation with an office and place of business located c/o HAPAG-LLOYD (AMERICA) LLC, 399 Hoes Lane, Piscataway, NJ 08854and at all relevant times, was and is still doing business within the jurisdiction of this Honorable Court as a vessel owning common carrier of goods for hire.

## RELEVANT FACTS

### FIRST MSC SHIPMENT: CONTAINER TGHU6246004

5.      On or about December 2, 2017, AgrItalia, S.R.L., the cargo shipper and/or its agents contracted with MSC to transport a consignment of 3,176 cartons of various foodstuffs then being in good order and condition, in an ocean shipping container which had been provided

2

by MSC, numbered TGHU6246004, from Naples, Italy, to New York, New York, with ultimate delivery to Tipp City, Ohio.

6.      On or about December 2, 2017, AgrItalia, S.R. L., loaded a consignment consisting of 3,176 cartons of various foodstuffs, then being in good order and condition, in a an ocean shipping container which had been provided by MSC, numbered TGHU6246004 which was delivered into the custody and control of MSC and/or its agents in Naples, Italy, for ocean carriage to New York, NY, and for ultimate delivery in Tipp City, Ohio.

7.      The transportation of the aforementioned consignment was all arranged in consideration of an agreed upon freight, and pursuant to MSC bill of lading number MSCUVW022460 dated December 2, 2017, which related to the 3,176 cartons of various foodstuffs loaded into container TGHU6246004.

8.      Thereafter, the aforementioned container was loaded aboard the M/V MAERSK KOBE and on December 2, 2017 the aforementioned vessel departed Naples, Italy for her intended destination.

9.      Thereafter the aforementioned container arrived in New York and was transshipped by MSC under the aforementioned bill of lading for final delivery to AgrUSA, Inc., the cargo consignee and owner, in Tipp City, Ohio, at which time it was discovered the subject shipment was damaged due to the shipment having been subjected to improper temperature during the care, custody and control of MSC.

10.      The damage to the cargo was not the result of any act or omission of the Plaintiff or its assured, or the consignee but, to the contrary, was due solely as the result of the negligence, unseaworthiness, fault, neglect, breach of contract of carriage and breach of bailment on the part of the Defendant and/or its agents.

3

11.     AgrUSA, Inc., sustained a loss in the amount of $15,368.88 due to damage to the subject shipment in addition to additional and necessary expenses incurred with respect to the damaged cargo.

12.     As a result of the foregoing, AgrUSA, Inc. suffered a loss in the amount of $15,368.88, no part of which has been paid, despite due demand of Defendant MSC.

13.     At all times relevant hereto, a contract of insurance for property damage was in effect between AgrUSA, Inc. and TRAVELERS, which provided coverage for, among other things, loss or damage to the consignment.

14.     Pursuant to the aforementioned contract of insurance between AgrUSA, Inc. and TRAVELERS, monies have been expended on behalf of AgrUSA, Inc. to the detriment of TRAVELERS in the amount of $15,368.88 due to the damages sustained by the aforementioned shipment during transit.

15.     As TRAVELERS has sustained damages as the result of said expenditures, expenditures rightly the responsibility of the Defendant, TRAVELERS has an equitable right of subrogation and is subrogated to the rights of its insured with respect to any and all claims for damages against the Defendants, including the deductible.

16.     By reason of the foregoing, plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be $15,368.88.

## SECOND MSC SHIPMENT: CONTAINER MEDU7065881

17.     On or about December 2, 2017, AgrItalia, S.R.L., the cargo shipper and/or its agents contracted with MSC to transport a consignment of 3,380 cartons of various foodstuffs then being in good order and condition, in an ocean shipping container which had been provided

4

by MSC, numbered MEDU7065881, from Naples, Italy, to New York, New York, with ultimate delivery to Tipp City, Ohio.

18.     On or about December 2, 2017, AgrItalia, S.R. L., loaded a consignment consisting of 3,380 cartons of various foodstuffs, then being in good order and condition, in a an ocean shipping container which had been provided by MSC, numbered MEDU7065881 which was delivered into the custody and control of MSC and/or its agents in Naples, Italy, for ocean carriage to New York, NY, and for ultimate delivery in Tipp City, Ohio.

19.     The transportation of the aforementioned consignment was all arranged in consideration of an agreed upon freight, and pursuant to MSC bill of lading number MSCUVW022486 dated December 2, 2017, which related to the 3,380 cartons of various foodstuffs loaded into container MEDU7065881.

20.     Thereafter, the aforementioned container was loaded aboard the M/V MAERSK KOBE and on December 2, 2017 the aforementioned vessel departed Naples, Italy for her intended destination.

21.     Thereafter the aforementioned container arrived in New York and was transshipped by MSC under the aforementioned bill of lading for final delivery to AgrUSA, Inc., the cargo consignee and owner, in Tipp City, Ohio, at which time it was discovered the subject shipment was damaged due to the shipment having been subjected to improper temperature during the care, custody and control of MSC.

22.     The damage to the cargo was not the result of any act or omission of the Plaintiff or its assured, or the consignee but, to the contrary, was due solely as the result of the negligence, unseaworthiness, fault, neglect, breach of contract of carriage and breach of bailment on the part of the Defendant and/or its agents.

23.     AgrUSA, Inc. sustained a loss in the amount of $12,552.22 due to damage to the subject shipment in addition to additional and necessary expenses incurred with respect to the damaged cargo.

24.     As a result of the foregoing, AgrUSA, Inc. suffered a loss in the amount of $12,552.22, no part of which has been paid, despite due demand of the Defendant MSC.

25.     At all times relevant hereto, a contract of insurance for property damage was in effect between AgrUSA, Inc. and TRAVELERS, which provided coverage for, among other things, loss or damage to the consignment.

26.     Pursuant to the aforementioned contract of insurance between AgrUSA, Inc. and TRAVELERS, monies have been expended on behalf of AgrUSA, Inc., to the detriment of TRAVELERS in the amount of $12,552.22 due to the damages sustained by the aforementioned shipment during transit.

27.     As TRAVELERS has sustained damages as the result of said expenditures, expenditures rightly the responsibility of the Defendants, TRAVELERS has an equitable right of subrogation and is subrogated to the rights of its insured with respect to any and all claims for damages against the Defendants, including the deductible.

28.     By reason of the foregoing, plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be $12,552.22.

### THIRD MSC SHIPMENT: CONTAINER TGHU6941027

29.     On or about December 2, 2017, AgrItalia, S.R.L., the cargo shipper and/or its agents contracted with MSC to transport a consignment of 3,380 cartons of various foodstuffs then being in good order and condition, in an ocean shipping container which had been provided

by MSC, numbered TGHU6941027, from Naples, Italy, to New York, New York, with ultimate delivery to Newport, MI.

30.     On or about December 2, 2017, AgrItalia, S.R. L., loaded a consignment consisting of 3,380 cartons of various foodstuffs, then being in good order and condition, in a an ocean shipping container which had been provided by MSC, numbered TGHU6941027 which was delivered into the custody and control of MSC and/or its agents in Naples, Italy, for ocean carriage to New York, NY, and for ultimate delivery in Newport, MI.

31.     The transportation of the aforementioned consignment was all arranged in consideration of an agreed upon freight, and pursuant to MSC bill of lading number MSCUVW022510 dated December 2, 2017, which related to the 3,380 cartons of various foodstuffs loaded into container TGHU6941027.

32.     Thereafter, the aforementioned container was loaded aboard the M/V MAERSK KOBE and on December 2, 2017 the aforementioned vessel departed Naples, Italy for her intended destination.

33.     Thereafter the aforementioned container arrived in New York and was transshipped by MSC under the aforementioned bill of lading for final delivery to AgrUSA, Inc., the cargo consignee and owner, in Newport, MI, at which time it was discovered the subject shipment was damaged due to the shipment having been subjected to improper temperature during the care, custody and control of MSC.

34.     The damage to the cargo was not the result of any act or omission of the Plaintiff or its assured, or the consignee but, to the contrary, was due solely as the result of the negligence, unseaworthiness, fault, neglect, breach of contract of carriage and breach of bailment on the part of the Defendant and/or its agents.

35.     AgrUSA, Inc. sustained a loss in the amount of $12,371.53 due to damage to the subject shipment in addition to additional and necessary expenses incurred with respect to the damaged cargo.

36.     As a result of the foregoing, AgrUSA, Inc. suffered a loss in the amount of $12,371.53, no part of which has been paid, despite due demand of Defendant MSC.

37.     At all times relevant hereto, a contract of insurance for property damage was in effect between AgrUSA, Inc. and TRAVELERS, which provided coverage for, among other things, loss or damage to the consignment.

38.     Pursuant to the aforementioned contract of insurance between AgrUSA, Inc. and TRAVELERS, monies have been expended on behalf of AgrUSA, Inc., to the detriment of TRAVELERS in the amount of $12,371.53 due to the damages sustained by the aforementioned shipment during transit.

39.     As TRAVELERS has sustained damages as the result of said expenditures, expenditures rightly the responsibility of the Defendants, TRAVELERS has an equitable right of subrogation and is subrogated to the rights of its insured with respect to any and all claims for damages against the Defendants, including the deductible.

40.     By reason of the foregoing, plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be $12,371.53.

**FOURTH MSC SHIPMENT: CONTAINER MEDU8424841**

41.     On or about December 2, 2017, AgrItalia, S.R.L., the cargo shipper and/or its agents contracted with MSC to transport a consignment of 3,268 cartons of various foodstuffs then being in good order and condition, in an ocean shipping container which had been provided

8

by MSC, numbered MEDU8424841, from Naples, Italy, to New York, New York, with ultimate delivery to Newport, MI.

42.     On or about December 2, 2017, AgrItalia, S.R. L., loaded a consignment consisting of 3,268 cartons of various foodstuffs, then being in good order and condition, in a an ocean shipping container which had been provided by MSC, numbered MEDU8424841 which was delivered into the custody and control of MSC and/or its agents in Naples, Italy, for ocean carriage to New York, NY, and for ultimate delivery in Newport, MI.

43.     The transportation of the aforementioned consignment was all arranged in consideration of an agreed upon freight, and pursuant to MSC bill of lading number MSCUVW022544 dated December 2, 2017, which related to the 3,268 cartons of various foodstuffs loaded into container MEDU8424841.

44.     Thereafter, the aforementioned container was loaded aboard the M/V MAERSK KOBE and on December 2, 2017 the aforementioned vessel departed Naples, Italy for her intended destination.

45.     Thereafter the aforementioned container arrived in New York and was transshipped by MSC under the aforementioned bill of lading for final delivery to AgrUSA, Inc., the cargo consignee and owner, in Newport, MI, at which time it was discovered the subject shipment was damaged due to the shipment having been subjected to improper temperature during the care, custody and control of MSC.

46.     The damage to the cargo was not the result of any act or omission of the Plaintiff or its assured, or the consignee but, to the contrary, was due solely as the result of the negligence, unseaworthiness, fault, neglect, breach of contract of carriage and breach of bailment on the part of the Defendant and/or its agents.

47.     AgrUSA, Inc. sustained a loss in the amount of $9,818.37 due to damage to the subject shipment in addition to additional and necessary expenses incurred with respect to the damaged cargo.

48.     As a result of the foregoing, AgrUSA, Inc. suffered a loss in the amount of $9,818.37, no part of which has been paid, despite due demand of the Defendant MSC.

49.     At all times relevant hereto, a contract of insurance for property damage was in effect between AgrUSA, Inc. and TRAVELERS, which provided coverage for, among other things, loss or damage to the consignment.

50.     Pursuant to the aforementioned contract of insurance between AgrUSA, Inc. and TRAVELERS, monies have been expended on behalf of AgrUSA, Inc., to the detriment of TRAVELERS in the amount of $9,18.37 due to the damages sustained by the aforementioned shipment during transit.

51.     As TRAVELERS has sustained damages as the result of said expenditures, expenditures rightly the responsibility of the Defendants, TRAVELERS has an equitable right of subrogation and is subrogated to the rights of its insured with respect to any and all claims for damages against the Defendants, including the deductible.

52.     By reason of the foregoing, plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be $9,818.37.

## FIFTH MSC SHIPMENT: CONTAINER BEAU4255291

53.     On or about December 2, 2017, AgrItalia, S.R.L., the cargo shipper and/or its agents contracted with MSC to transport a consignment of 3,380 cartons of various foodstuffs then being in good order and condition, in an ocean shipping container which had been provided

by MSC, numbered BEAU4255291, from Naples, Italy, to New York, New York, with ultimate delivery to Pleasant Prairie, WI.

54.     On or about December 2, 2017, AgrItalia, S.R.L., loaded a consignment consisting of 3,380 cartons of various foodstuffs, then being in good order and condition, in a an ocean shipping container which had been provided by MSC, numbered BEAU4255291 which was delivered into the custody and control of MSC and/or its agents in Naples, Italy, for ocean carriage to New York, NY, and for ultimate delivery in Pleasant Prairie, WI.

55.     The transportation of the aforementioned consignment was all arranged in consideration of an agreed upon freight, and pursuant to MSC bill of lading number MSCUVW022577 dated December 2, 2017, which related to the 3,380 cartons of various foodstuffs loaded into container BEAU4255291.

56.     Thereafter, the aforementioned container was loaded aboard the M/V MAERSK KOBE and on December 2, 2017 the aforementioned vessel departed Naples, Italy for her intended destination.

57.     Thereafter the aforementioned container arrived in New York and was transshipped by MSC under the aforementioned bill of lading for final delivery to AgrUSA, Inc., the cargo consignee and owner, in Pleasant Prairie, WI, at which time it was discovered the subject shipment was damaged due to the shipment having been subjected to improper temperature during the care, custody and control of MSC.

58.     The damage to the cargo was not the result of any act or omission of the Plaintiff or its assured, or the consignee but, to the contrary, was due solely as the result of the negligence, unseaworthiness, fault, neglect, breach of contract of carriage and breach of bailment on the part of the Defendant and/or its agents.

59.     AgrUSA, Inc. sustained a loss in the amount of $11,408.55 due to damage to the subject shipment in addition to additional and necessary expenses incurred with respect to the damaged cargo.

60.     As a result of the foregoing, AgrUSA, Inc. suffered a loss in the amount of $11,408.55, no part of which has been paid, despite due demand of the Defendant MSC.

61.     At all times relevant hereto, a contract of insurance for property damage was in effect between AgrUSA, Inc. and TRAVELERS, which provided coverage for, among other things, loss or damage to the consignment.

62.     Pursuant to the aforementioned contract of insurance between AgrUSA, Inc. and TRAVELERS, monies have been expended on behalf of AgrUSA, Inc., to the detriment of TRAVELERS in the amount of $11,408.55 due to the damages sustained by the aforementioned shipment during transit.

63.     As TRAVELERS has sustained damages as the result of said expenditures, expenditures rightly the responsibility of the Defendants, TRAVELERS has an equitable right of subrogation and is subrogated to the rights of its insured with respect to any and all claims for damages against the Defendants, including the deductible.

64.     By reason of the foregoing, plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be $11,408.55.

## SIXTH MSC SHIPMENT: CONTAINER MEDU8860001

65.     On or about December 2, 2017, AgrItalia, S.R.L., the cargo shipper and/or its agents contracted with MSC to transport a consignment of 3,380 cartons of various foodstuffs then being in good order and condition, in an ocean shipping container which had been provided

by MSC, numbered MEDU8860001, from Naples, Italy, to New York, New York, with ultimate delivery to Lansing, MI.

66.     On or about December 2, 2017, AgrItalia, S.R.L., loaded a consignment consisting of 3,380 cartons of various foodstuffs, then being in good order and condition, in a an ocean shipping container which had been provided by MSC, numbered MEDU8860001 which was delivered into the custody and control of MSC and/or its agents in Naples, Italy, for ocean carriage to New York, NY, and for ultimate delivery in Lansing, MI.

67.     The transportation of the aforementioned consignment was all arranged in consideration of an agreed upon freight, and pursuant to MSC bill of lading number MSCUVW022593 dated December 2, 2017, which related to the 3,380 cartons of various foodstuffs loaded into container MEDU8860001.

68.     Thereafter, the aforementioned container was loaded aboard the M/V MAERSK KOBE and on December 2, 2017 the aforementioned vessel departed Naples, Italy for her intended destination.

69.     Thereafter the aforementioned container arrived in New York and was transshipped by MSC under the aforementioned bill of lading for final delivery to AgrUSA, Inc., the cargo consignee and owner, in Lansing, MI, at which time it was discovered the subject shipment was damaged due to the shipment having been subjected to improper temperature during the care, custody and control of MSC.

70.     The damage to the cargo was not the result of any act or omission of the Plaintiff or its assured, or the consignee but, to the contrary, was due solely as the result of the negligence, unseaworthiness, fault, neglect, breach of contract of carriage and breach of bailment on the part of the Defendant and/or its agents.

71.     AgrUSA, Inc. sustained a loss in the amount of $12,557.44 due to damage to the subject shipment in addition to additional and necessary expenses incurred with respect to the damaged cargo.

72.     As a result of the foregoing, AgrUSA, Inc. suffered a loss in the amount of $12,557.44, no part of which has been paid, despite due demand of the Defendant MSC.

73.     At all times relevant hereto, a contract of insurance for property damage was in effect between AgrUSA, Inc. and TRAVELERS, which provided coverage for, among other things, loss or damage to the consignment.

74.     Pursuant to the aforementioned contract of insurance between AgrUSA, Inc. and TRAVELERS, monies have been expended on behalf of AgrUSA, Inc., to the detriment of TRAVELERS in the amount of $12,557.44 due to the damages sustained by the aforementioned shipment during transit.

75.     As TRAVELERS has sustained damages as the result of said expenditures, expenditures rightly the responsibility of the Defendants, TRAVELERS has an equitable right of subrogation and is subrogated to the rights of its insured with respect to any and all claims for damages against the Defendants, including the deductible.

76.     By reason of the foregoing, plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be $12,557.44.

**SEVENTH MSC SHIPMENT: CONTAINER CAIU8864965**

77.     On or about December 2, 2017, AgrItalia, S.R.L., the cargo shipper and/or its agents contracted with MSC to transport a consignment of 3,855 cartons of various foodstuffs then being in good order and condition, in an ocean shipping container which had been provided

14

by MSC, numbered CAIU8864965, from Naples, Italy, to New York, New York, with ultimate delivery to Lansing, MI.

78.    On or about December 2, 2017, AgrItalia, S.R.L., loaded a consignment consisting of 3,855 cartons of various foodstuffs, then being in good order and condition, in a an ocean shipping container which had been provided by MSC, numbered CAIU8864965 which was delivered into the custody and control of MSC and/or its agents in Naples, Italy, for ocean carriage to New York, NY, and for ultimate delivery in Lansing, MI.

79.    The transportation of the aforementioned consignment was all arranged in consideration of an agreed upon freight, and pursuant to MSC bill of lading number MSCUVW022627 dated December 2, 2017, which related to the 3,855 cartons of various foodstuffs loaded into container CAIU8864965.

80.    Thereafter, the aforementioned container was loaded aboard the M/V MAERSK KOBE and on December 2, 2017 the aforementioned vessel departed Naples, Italy for her intended destination.

81.    Thereafter the aforementioned container arrived in New York and was transshipped by MSC under the aforementioned bill of lading for final delivery to AgrUSA, Inc., the cargo consignee and owner, in Lansing, MI, at which time it was discovered the subject shipment was damaged due to the shipment having been subjected to improper temperature during the care, custody and control of MSC.

82.    The damage to the cargo was not the result of any act or omission of the Plaintiff or its assured, or the consignee but, to the contrary, was due solely as the result of the negligence, unseaworthiness, fault, neglect, breach of contract of carriage and breach of bailment on the part of the Defendant and/or its agents.

83.     AgrUSA, Inc. sustained a loss in the amount of $19,679.56 due to damage to the subject shipment in addition to additional and necessary expenses incurred with respect to the damaged cargo.

84.     As a result of the foregoing, AgrUSA, Inc. suffered a loss in the amount of $19,679.56, no part of which has been paid, despite due demand of the Defendant MSC.

85.     At all times relevant hereto, a contract of insurance for property damage was in effect between AgrUSA, Inc. and TRAVELERS, which provided coverage for, among other things, loss or damage to the consignment.

86.     Pursuant to the aforementioned contract of insurance between AgrUSA, Inc. and TRAVELERS, monies have been expended on behalf of AgrUSA, Inc., to the detriment of TRAVELERS in the amount of $19,679.56 due to the damages sustained by the aforementioned shipment during transit.

87.     As TRAVELERS has sustained damages as the result of said expenditures, expenditures rightly the responsibility of the Defendants, TRAVELERS has an equitable right of subrogation and is subrogated to the rights of its insured with respect to any and all claims for damages against the Defendants, including the deductible.

88.     By reason of the foregoing, plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be $19,679.56.

## EIGHTH MSC SHIPMENT: CONTAINER TCLU7890049

89.     On or about December 2, 2017, AgrItalia, S.R.L., the cargo shipper and/or its agents contracted with MSC to transport a consignment of 2,916 cartons of various foodstuffs then being in good order and condition, in an ocean shipping container which had been provided

by MSC, numbered TCLU7890049, from Naples, Italy, to New York, New York, with ultimate delivery to Pleasant Prairie, WI.

90.     On or about December 2, 2017, AgrItalia, S.R.L., loaded a consignment consisting of 2,916 cartons of various foodstuffs, then being in good order and condition, in a an ocean shipping container which had been provided by MSC, numbered TCLU7890049, which was delivered into the custody and control of MSC and/or its agents in Naples, Italy, for ocean carriage to New York, NY, and for ultimate delivery in Pleasant Prairie, WI.

91.     The transportation of the aforementioned consignment was all arranged in consideration of an agreed upon freight, and pursuant to MSC bill of lading number MSCUVW028111 dated December 2, 2017, which related to the 2,916 cartons of various foodstuffs loaded into container TCLU7890049.

92.     Thereafter, the aforementioned container was loaded aboard the M/V MAERSK KOBE and on December 2, 2017 the aforementioned vessel departed Naples, Italy for her intended destination.

93.     Thereafter the aforementioned container arrived in New York and was transshipped by MSC under the aforementioned bill of lading for final delivery to AgrUSA, Inc., the cargo consignee and owner, in Pleasant Prairie, WI, at which time it was discovered the subject shipment was damaged due to the shipment having been subjected to improper temperature during the care, custody and control of MSC.

94.     The damage to the cargo was not the result of any act or omission of the Plaintiff or its assured, or the consignee but, to the contrary, was due solely as the result of the negligence, unseaworthiness, fault, neglect, breach of contract of carriage and breach of bailment on the part of the Defendant MSC and/or its agents.

95.     AgrUSA, Inc. sustained a loss in the amount of $11,901.17 due to damage to the subject shipment in addition to additional and necessary expenses incurred with respect to the damaged cargo.

96.     At all times relevant hereto, a contract of insurance for property damage was in effect between AgrUSA, Inc. and TRAVELERS, which provided coverage for, among other things, loss or damage to the consignment.

97.     Pursuant to the aforementioned contract of insurance between AgrUSA, Inc. and TRAVELERS, monies have been expended on behalf of AgrUSA, Inc., to the detriment of TRAVELERS in the amount of $11,901.17 due to the damages sustained by the aforementioned shipment during transit.

98.     As TRAVELERS has sustained damages as the result of said expenditures, expenditures rightly the responsibility of the Defendants, TRAVELERS has an equitable right of subrogation and is subrogated to the rights of its insured with respect to any and all claims for damages against the Defendant MSC, including the deductible.

99.     By reason of the foregoing, plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be $11,901.17.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST MSC- BREACH OF CONTRACT

100.     The Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 99, inclusive, as if herein set forth at length.

101.     Pursuant to the contracts entered into between the parties, the defendant MSC owed a contractual and statutory duty to the Plaintiff, to carry, bail, keep and care for, protect

18

and deliver the Plaintiff's cargoes in the same good order and condition as at the time said defendants first accepted custody and control of the goods.

102.    The defendant MSC breached their contractual and statutory duties by failing to properly care for, bail and protect the Plaintiff's cargoes in the same good order and condition as at the time said defendant first accepted custody and control of the goods.

103.    As a direct and proximate result of said breach of contract by defendant MSC, the Plaintiff has suffered damages in the amount presently estimated to be no less than a total of $105,657.72.

104.    By reason of the foregoing, the Plaintiff has sustained losses which will be shown with more specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be no less than $105,657.72.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST MSC - BREACH OF BAILMENT

105.    The Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 104, inclusive, as if herein set forth at length.

106.    Pursuant to their obligations as bailees for hire of the Plaintiff's cargo, the defendant MSC owed contractual and statutory duties to Plaintiff to carry, bail, keep and care for, protect and deliver the Plaintiff's cargo in the same good order and condition as at the time said defendant first accepted custody and control of the goods.

107.    The defendant MSC breached its duties as bailees for hire by failing to properly carry, bail, keep and care for, protect and deliver the Plaintiff's cargo in the same good order and condition as at the time said defendants first accepted custody and control of the goods.

108.    As a direct and proximate result of the breach of bailment by the Defendant MSC, the Plaintiff has suffered damages in the approximate amount of $105,657.72.

109.    By reason of the foregoing, the Plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be no less than $105,657.72.

### AS AND FOR A THIRD CAUSE OF ACTION AGAINST MSC - NEGLIGENCE

110.    The Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 109, inclusive, as if herein set forth at length.

111.    The Defendant MSC owed a duty to the Plaintiff to carry, bail, keep and care for, protect and deliver the Plaintiff's cargo in the same good order and condition as at the time said defendant first accepted custody and control of the goods.

112.    The Defendant MSC breached and were negligent in exercising their duty to carry, bail, keep and care for, protect and deliver the Plaintiff's cargo in the same good order and condition as at the time said defendant first accepted custody and control of the goods.

113.    As a direct and proximate result of the negligence by the Defendant MSC, the Plaintiff has suffered damages in the approximate amount of $105,657.72.

114.    By reason of the foregoing, the Plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be no less than $105,657.72.

115.    **FIRST  HAPAG  SHIPMENT:  CONTAINER  TGHU6246004**On  or  about December 7, 2017, AgrItalia, S.R.L., the cargo shipper and/or its agents contracted with HAPAG to transport a consignment of 3,469 cartons of various foodstuffs then being in good order and

condition, in an ocean shipping container which had been provided by HAPAG, numbered HAMU1303515, from Salerno, Italy, to New York, New York, with ultimate delivery to Newport, MI.

116.    On or about December 7, 2017, AgrItalia, S.R.L., loaded a consignment consisting of 3,469 cartons of various foodstuffs, then being in good order and condition, in a an ocean shipping container which had been provided by HAPAG, numbered HAMU1303515, which was delivered into the custody and control of HAPAG and/or its agents in Salerno, Italy, for ocean carriage to New York, NY, and for ultimate delivery in Newport, MI.

117.    The transportation of the aforementioned consignment was all arranged in consideration of an agreed upon freight, and pursuant to HAPAG bill of lading number HLCUEUR1711APUO0 dated December 7, 2017, which related to the 3,469 cartons of various foodstuffs loaded into container HAMU1303515.

118.    Thereafter, the aforementioned container was loaded aboard the M/V BREVIK BRIDGE and on December 7, 2017 the aforementioned vessel departed Salerno, Italy for her intended destination.

119.    Thereafter the aforementioned container arrived in New York and was transshipped by HAPAG under the aforementioned bill of lading for final delivery to AgrUSA, Inc., the cargo consignee and owner, in Newport, MI, at which time it was discovered the subject shipment was damaged due to the shipment having been subjected to improper temperature during the care, custody and control of HAPAG.

120.    The damage to the cargo was not the result of any act or omission of the Plaintiff or its assured, or the consignee but, to the contrary, was due solely as the result of the negligence,

unseaworthiness, fault, neglect, breach of contract of carriage and breach of bailment on the part of the Defendant HAPAG and/or its agents.

121.    AgrUSA, Inc. sustained a loss in the amount of $16,178.76 due to damage to the subject shipment in addition to additional and necessary expenses incurred with respect to the damaged cargo.

122.    As a result of the foregoing, AgrUSA, Inc. suffered a loss in the amount of $16,178.76, no part of which has been paid, despite due demand of Defendant HAPAG.

123.    At all times relevant hereto, a contract of insurance for property damage was in effect between AgrUSA, Inc. and TRAVELERS, which provided coverage for, among other things, loss or damage to the consignment.

124.    Pursuant to the aforementioned contract of insurance between AgrUSA, Inc. and TRAVELERS, monies have been expended on behalf of AgrUSA, Inc., to the detriment of TRAVELERS in the amount of $16,178.76 due to the damages sustained by the aforementioned shipment during transit.

125.    As TRAVELERS has sustained damages as the result of said expenditures, expenditures rightly the responsibility of the Defendant HAPAG, TRAVELERS has an equitable right of subrogation and is subrogated to the rights of its insured with respect to any and all claims for damages against the Defendant HAPAG, including the deductible.

126.    By reason of the foregoing, plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be $16,178.76.

**SECOND HAPAG SHIPMENT: CONTAINER CAIU8093228**

127.    On or about November 26, 2017, AgrItalia, S.R.L., the cargo shipper and/or its agents contracted with HAPAG to transport a consignment of 3,380 cartons of various foodstuffs then being in good order and condition, in an ocean shipping container which had been provided by HAPAG, numbered CAIU8093228, from Salerno, Italy, to New York, New York, with ultimate delivery to Lansing, MI.

128.    On or about November 26, 2017, AgrItalia, S.R.L., loaded a consignment consisting of 3,380 cartons of various foodstuffs, then being in good order and condition, in a an ocean shipping container which had been provided by HAPAG, numbered CAIU8093228, which was delivered into the custody and control of HAPAG and/or its agents in Salerno, Italy, for ocean carriage to New York, NY, and for ultimate delivery in Lansing, MI.

129.    The transportation of the aforementioned consignment was all arranged in consideration of an agreed upon freight, and pursuant to HAPAG bill of lading number HLCUGOA171196010 dated November 26, 2017, which related to the 3,380 cartons of various foodstuffs loaded into container CAIU8093228.

130.    Thereafter, the aforementioned container was loaded aboard the M/V SPIRIT OF MELBOURNE and on November 26, 2017 the aforementioned vessel departed Salerno, Italy for her intended destination.

131.    Thereafter the aforementioned container arrived in New York and was transshipped by HAPAG under the aforementioned bill of lading for final delivery to AgrUSA, Inc., the cargo consignee and owner, in Lansing, MI, at which time it was discovered the subject shipment was damaged due to the shipment having been subjected to improper temperature during the care, custody and control of HAPAG.

132.    The damage to the cargo was not the result of any act or omission of the Plaintiff or its assured, or the consignee but, to the contrary, was due solely as the result of the negligence, unseaworthiness, fault, neglect, breach of contract of carriage and breach of bailment on the part of the Defendant HAPAG and/or its agents.

133.    AgrUSA, Inc. sustained a loss in the amount of $12,125.51 due to damage to the subject shipment in addition to additional and necessary expenses incurred with respect to the damaged cargo.

134.    As a result of the foregoing, AgrUSA, Inc. suffered a loss in the amount of $12,125.51, no part of which has been paid, despite due demand of Defendant HAPAG.

135.    At all times relevant hereto, a contract of insurance for property damage was in effect between AgrUSA, Inc. and TRAVELERS, which provided coverage for, among other things, loss or damage to the consignment.

136.    Pursuant to the aforementioned contract of insurance between AgrUSA, Inc. and TRAVELERS, monies have been expended on behalf of AgrUSA, Inc., to the detriment of TRAVELERS in the amount of $12,125.51 due to the damages sustained by the aforementioned shipment during transit.

137.    As TRAVELERS has sustained damages as the result of said expenditures, expenditures rightly the responsibility of the Defendant HAPAG, TRAVELERS has an equitable right of subrogation and is subrogated to the rights of its insured with respect to any and all claims for damages against the Defendant HAPAG, including the deductible.

138.    By reason of the foregoing, plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be $12,125.51.

## THIRD HAPAG SHIPMENT: CONTAINER TCLU8116211

139.     On or about November 26, 2017, AgrItalia, S.R.L., the cargo shipper and/or its agents contracted with HAPAG to transport a consignment of 3,380 cartons of various foodstuffs then being in good order and condition, in an ocean shipping container which had been provided by HAPAG, numbered TCLU8116211, from Salerno, Italy, to New York, New York, with ultimate delivery to Lansing, MI.

140.     On or about November 26, 2017, AgrItalia, S.R.L., loaded a consignment consisting of 3,380 cartons of various foodstuffs, then being in good order and condition, in a an ocean shipping container which had been provided by HAPAG, numbered TCLU8116211, which was delivered into the custody and control of HAPAG and/or its agents in Salerno, Italy, for ocean carriage to New York, NY, and for ultimate delivery in Lansing, MI.

141.     The transportation of the aforementioned consignment was all arranged in consideration of an agreed upon freight, and pursuant to HAPAG bill of lading number HLCUGOA171196065 dated November 26, 2017, which related to the 3,380 cartons of various foodstuffs loaded into container TCLU8116211.

142.     Thereafter, the aforementioned container was loaded aboard the M/V SPIRIT OF MELBOURNE and on November 26, 2017 the aforementioned vessel departed Salerno, Italy for her intended destination.

143.     Thereafter the aforementioned container arrived in New York and was transshipped by HAPAG under the aforementioned bill of lading for final delivery to AgrUSA, Inc., the cargo consignee and owner, in Lansing, MI, at which time it was discovered the subject shipment was damaged due to the shipment having been subjected to improper temperature during the care, custody and control of HAPAG.

144.    The damage to the cargo was not the result of any act or omission of the Plaintiff or its assured, or the consignee but, to the contrary, was due solely as the result of the negligence, unseaworthiness, fault, neglect, breach of contract of carriage and breach of bailment on the part of the Defendant HAPAG and/or its agents.

145.    AgrUSA, Inc. sustained a loss in the amount of $11,474.97 due to damage to the subject shipment in addition to additional and necessary expenses incurred with respect to the damaged cargo.

146.    As a result of the foregoing, AgrUSA, Inc. suffered a loss in the amount of $11,474.97, no part of which has been paid, despite due demand of Defendant HAPAG.

147.    At all times relevant hereto, a contract of insurance for property damage was in effect between AgrUSA, Inc. and TRAVELERS, which provided coverage for, among other things, loss or damage to the consignment.

148.    Pursuant to the aforementioned contract of insurance between AgrUSA, Inc. and TRAVELERS, monies have been expended on behalf of AgrUSA, Inc., to the detriment of TRAVELERS in the amount of $11,474.97 due to the damages sustained by the aforementioned shipment during transit.

149.    As TRAVELERS has sustained damages as the result of said expenditures, expenditures rightly the responsibility of the Defendant HAPAG, TRAVELERS has an equitable right of subrogation and is subrogated to the rights of its insured with respect to any and all claims for damages against the Defendant HAPAG, including the deductible.

150.    By reason of the foregoing, plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be $11,474.97.

**FOURTH HAPAG SHIPMENT: CONTAINER UETU5460818**

151.   On or about November 26, 2017, AgrItalia, S.R.L., the cargo shipper and/or its agents contracted with HAPAG to transport a consignment of 3,380 cartons of various foodstuffs then being in good order and condition, in an ocean shipping container which had been provided by HAPAG, numbered UETU5460818, from Salerno, Italy, to New York, New York, with ultimate delivery to Lansing, MI.

152.   On or about November 26, 2017, AgrItalia, S.R.L., loaded a consignment consisting of 3,380 cartons of various foodstuffs, then being in good order and condition, in a an ocean shipping container which had been provided by HAPAG, numbered UETU5460818, which was delivered into the custody and control of HAPAG and/or its agents in Salerno, Italy, for ocean carriage to New York, NY, and for ultimate delivery in Lansing, MI.

153.   The transportation of the aforementioned consignment was all arranged in consideration of an agreed upon freight, and pursuant to HAPAG bill of lading number HLCUGOA171196127 dated November 26, 2017, which related to the 3,380 cartons of various foodstuffs loaded into container UETU5460818.

154.   Thereafter, the aforementioned container was loaded aboard the M/V SPIRIT OF MELBOURNE and on November 26, 2017 the aforementioned vessel departed Salerno, Italy for her intended destination.

155.   Thereafter the aforementioned container arrived in New York and was transshipped by HAPAG under the aforementioned bill of lading for final delivery to AgrUSA, Inc., the cargo consignee and owner, in Lansing, MI, at which time it was discovered the subject shipment was damaged due to the shipment having been subjected to improper temperature during the care, custody and control of HAPAG.

156.    The damage to the cargo was not the result of any act or omission of the Plaintiff or its assured, or the consignee but, to the contrary, was due solely as the result of the negligence, unseaworthiness, fault, neglect, breach of contract of carriage and breach of bailment on the part of the Defendant HAPAG and/or its agents.

157.    AgrUSA, Inc. sustained a loss in the amount of $18,336.46 due to damage to the subject shipment in addition to additional and necessary expenses incurred with respect to the damaged cargo.

158.    As a result of the foregoing, AgrUSA, Inc. suffered a loss in the amount of $18,336.46, no part of which has been paid, despite due demand of Defendant HAPAG.

159.    At all times relevant hereto, a contract of insurance for property damage was in effect between AgrUSA, Inc. and TRAVELERS, which provided coverage for, among other things, loss or damage to the consignment.

160.    Pursuant to the aforementioned contract of insurance between AgrUSA, Inc. and TRAVELERS, monies have been expended on behalf of AgrUSA, Inc., to the detriment of TRAVELERS in the amount of $18,336.46 due to the damages sustained by the aforementioned shipment during transit.

161.    As TRAVELERS has sustained damages as the result of said expenditures, expenditures rightly the responsibility of the Defendant HAPAG, TRAVELERS has an equitable right of subrogation and is subrogated to the rights of its insured with respect to any and all claims for damages against the Defendant HAPAG, including the deductible.

162.    By reason of the foregoing, plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be $18,336.46.

## FIFTH HAPAG SHIPMENT: CONTAINER UACU5698340

163.    On or about November 26, 2017, AgrItalia, S.R.L., the cargo shipper and/or its agents contracted with HAPAG to transport a consignment of 3,380 cartons of various foodstuffs then being in good order and condition, in an ocean shipping container which had been provided by HAPAG, numbered UACU5698340, from Salerno, Italy, to New York, New York, with ultimate delivery to Tipp City, OH.

164.    On or about November 26, 2017, AgrItalia, S.R.L., loaded a consignment consisting of 3,380 cartons of various foodstuffs, then being in good order and condition, in a an ocean shipping container which had been provided by HAPAG, numbered UACU5698340, which was delivered into the custody and control of HAPAG and/or its agents in Salerno, Italy, for ocean carriage to New York, NY, and for ultimate delivery in Tipp City, OH.

165.    The transportation of the aforementioned consignment was all arranged in consideration of an agreed upon freight, and pursuant to HAPAG bill of lading number HLCUGOA171196160 dated November 26, 2017, which related to the 3,380 cartons of various foodstuffs loaded into container UACU5698340.

166.    Thereafter, the aforementioned container was loaded aboard the M/V SPIRIT OF MELBOURNE and on November 26, 2017 the aforementioned vessel departed Salerno, Italy for her intended destination.

167.    Thereafter the aforementioned container arrived in New York and was transshipped by HAPAG under the aforementioned bill of lading for final delivery to AgrUSA, Inc., the cargo consignee and owner, in Tipp City, OH, at which time it was discovered the subject shipment was damaged due to the shipment having been subjected to improper temperature during the care, custody and control of HAPAG.

168.    The damage to the cargo was not the result of any act or omission of the Plaintiff or its assured, or the consignee but, to the contrary, was due solely as the result of the negligence, unseaworthiness, fault, neglect, breach of contract of carriage and breach of bailment on the part of the Defendant HAPAG and/or its agents.

169.    AgrUSA, Inc. sustained a loss in the amount of $18,251.25 due to damage to the subject shipment in addition to additional and necessary expenses incurred with respect to the damaged cargo.

170.    As a result of the foregoing, AgrUSA, Inc. suffered a loss in the amount of $18,251.25, no part of which has been paid, despite due demand of Defendant HAPAG.

171.    At all times relevant hereto, a contract of insurance for property damage was in effect between AgrUSA, Inc. and TRAVELERS, which provided coverage for, among other things, loss or damage to the consignment.

172.    Pursuant to the aforementioned contract of insurance between AgrUSA, Inc. and TRAVELERS, monies have been expended on behalf of AgrUSA, Inc., to the detriment of TRAVELERS in the amount of $18,251.25 due to the damages sustained by the aforementioned shipment during transit.

173.    As TRAVELERS has sustained damages as the result of said expenditures, expenditures rightly the responsibility of the Defendant HAPAG, TRAVELERS has an equitable right of subrogation and is subrogated to the rights of its insured with respect to any and all claims for damages against the Defendant HAPAG, including the deductible.

174.    By reason of the foregoing, plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be $18,251.25.

## SIXTH HAPAG SHIPMENT: CONTAINER TCLU5125272

175.    On or about November 26, 2017, AgrItalia, S.R.L., the cargo shipper and/or its agents contracted with HAPAG to transport a consignment of 3,380 cartons of various foodstuffs then being in good order and condition, in an ocean shipping container which had been provided by HAPAG, numbered TCLU5125272, from Salerno, Italy, to New York, New York, with ultimate delivery to Pleasant Prairie, WI.

176.    On or about November 26, 2017, AgrItalia, S.R.L., loaded a consignment consisting of 3,380 cartons of various foodstuffs, then being in good order and condition, in a an ocean shipping container which had been provided by HAPAG, numbered TCLU5125272, which was delivered into the custody and control of HAPAG and/or its agents in Salerno, Italy, for ocean carriage to New York, NY, and for ultimate delivery in Pleasant Prairie, WI.

177.    The transportation of the aforementioned consignment was all arranged in consideration of an agreed upon freight, and pursuant to HAPAG bill of lading number HLCUGOA171196277 dated November 26, 2017, which related to the 3,380 cartons of various foodstuffs loaded into container TCLU5125272.

178.    Thereafter, the aforementioned container was loaded aboard the M/V SPIRIT OF MELBOURNE and on November 26, 2017 the aforementioned vessel departed Salerno, Italy for her intended destination.

179.    Thereafter the aforementioned container arrived in New York and was transshipped by HAPAG under the aforementioned bill of lading for final delivery to AgrUSA, Inc., the cargo consignee and owner, in Pleasant Prairie, WI, at which time it was discovered the subject shipment was damaged due to the shipment having been subjected to improper temperature during the care, custody and control of HAPAG.

180.    The damage to the cargo was not the result of any act or omission of the Plaintiff or its assured, or the consignee but, to the contrary, was due solely as the result of the negligence, unseaworthiness, fault, neglect, breach of contract of carriage and breach of bailment on the part of the Defendant HAPAG and/or its agents.

181.    AgrUSA, Inc. sustained a loss in the amount of $12,786.78 due to damage to the subject shipment in addition to additional and necessary expenses incurred with respect to the damaged cargo.

182.    As a result of the foregoing, AgrUSA, Inc. suffered a loss in the amount of $12,786.78, no part of which has been paid, despite due demand of Defendant HAPAG.

183.    At all times relevant hereto, a contract of insurance for property damage was in effect between AgrUSA, Inc. and TRAVELERS, which provided coverage for, among other things, loss or damage to the consignment.

184.    Pursuant to the aforementioned contract of insurance between AgrUSA, Inc. and TRAVELERS, monies have been expended on behalf of AgrUSA, Inc., to the detriment of TRAVELERS in the amount of $12,786.78 due to the damages sustained by the aforementioned shipment during transit.

185.    As TRAVELERS has sustained damages as the result of said expenditures, expenditures rightly the responsibility of the Defendant HAPAG, TRAVELERS has an equitable right of subrogation and is subrogated to the rights of its insured with respect to any and all claims for damages against the Defendant HAPAG, including the deductible.

186.    By reason of the foregoing, plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be $12,786.78.

## SEVENTH HAPAG SHIPMENT: CONTAINER CLHU8600277

187.   On or about November 26, 2017, AgrItalia, S.R.L., the cargo shipper and/or its agents contracted with HAPAG to transport a consignment of 3,380 cartons of various foodstuffs then being in good order and condition, in an ocean shipping container which had been provided by HAPAG, numbered CLHU8600277, from Salerno, Italy, to New York, New York, with ultimate delivery to Newport, MI.

188.   On or about November 26, 2017, AgrItalia, S.R.L., loaded a consignment consisting of 3,380 cartons of various foodstuffs, then being in good order and condition, in a an ocean shipping container which had been provided by HAPAG, numbered CLHU8600277, which was delivered into the custody and control of HAPAG and/or its agents in Salerno, Italy, for ocean carriage to New York, NY, and for ultimate delivery in Newport, MI.

189.   The transportation of the aforementioned consignment was all arranged in consideration of an agreed upon freight, and pursuant to HAPAG bill of lading number HLCUGOA171196445 dated November 26, 2017, which related to the 3,380 cartons of various foodstuffs loaded into container CLHU8600277.

190.   Thereafter, the aforementioned container was loaded aboard the M/V SPIRIT OF MELBOURNE and on November 26, 2017 the aforementioned vessel departed Salerno, Italy for her intended destination.

191.   Thereafter the aforementioned container arrived in New York and was transshipped by HAPAG under the aforementioned bill of lading for final delivery to AgrUSA, Inc., the cargo consignee and owner, in Newport, MI, at which time it was discovered the subject shipment was damaged due to the shipment having been subjected to improper temperature during the care, custody and control of HAPAG.

192.    The damage to the cargo was not the result of any act or omission of the Plaintiff or its assured, or the consignee but, to the contrary, was due solely as the result of the negligence, unseaworthiness, fault, neglect, breach of contract of carriage and breach of bailment on the part of the Defendant HAPAG and/or its agents.

193.    AgrUSA, Inc. sustained a loss in the amount of $12,725.51 due todamage to the subject shipment in addition to additional and necessary expenses incurred with respect to the damaged cargo.

194.    As a result of the foregoing, AgrUSA, Inc. suffered a loss in the amount of $12,725.51, no part of which has been paid, despite due demand of Defendant HAPAG.

195.    At all times relevant hereto, a contract of insurance for property damage was in effect between AgrUSA, Inc. and TRAVELERS, which provided coverage for, among other things, loss or damage to the consignment.

196.    Pursuant to the aforementioned contract of insurance between AgrUSA, Inc. and TRAVELERS, monies have been expended on behalf of AgrUSA, Inc., to the detriment of TRAVELERS in the amount of $12,725.51 due to the damages sustained by the aforementioned shipment during transit.

197.    As TRAVELERS has sustained damages as the result of said expenditures, expenditures rightly the responsibility of the Defendant HAPAG, TRAVELERS has an equitable right of subrogation and is subrogated to the rights of its insured with respect to any and all claims for damages against the Defendant HAPAG, including the deductible.

198.    By reason of the foregoing, plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be $12,725.51.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST HAPAG- BREACH OF

## CONTRACT

199.    The Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 4 and 115through 198 , inclusive, as if herein set forth at length.

200.    Pursuant to the contracts entered into between the parties, the defendant HAPAG owed a contractual and statutory duty to the Plaintiff, to carry, bail, keep and care for, protect and deliver the Plaintiff's cargoes in the same good order and condition as at the time said defendants first accepted custody and control of the goods.

201.    The defendant HAPAG breached their contractual and statutory duties by failing to properly care for, bail and protect the Plaintiff's cargoes in the same good order and condition as at the time said defendant first accepted custody and control of the goods.

202.    As a direct and proximate result of said breach of contract by defendant HAPAG, the Plaintiff has suffered damages in the amount presently estimated to be no less than a total of $101,879.24.

203.    By reason of the foregoing, the Plaintiff has sustained losses which will be shown with more specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be no less than $101,879.24

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST HAPAG - BREACH OF

## BAILMENT

204.    The Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 4 and 115 through 203, inclusive, as if herein set forth at length.

205.    Pursuant to their obligations as bailees for hire of the Plaintiff's cargo, the defendant HAPAG owed contractual and statutory duties to Plaintiff to carry, bail, keep and care

for, protect and deliver the Plaintiff's cargo in the same good order and condition as at the time said defendant first accepted custody and control of the goods.

206.    The defendant HAPAG breached its duties as bailees for hire by failing to properly carry, bail, keep and care for, protect and deliver the Plaintiff's cargo in the same good order and condition as at the time said defendants first accepted custody and control of the goods.

207.    As a direct and proximate result of said breach of contract by defendant HAPAG, the Plaintiff has suffered damages in the amount presently estimated to be no less than a total of $101,879.24.

208.    By reason of the foregoing, the Plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be no less than $101,879.24.

### AS AND FOR A THIRD CAUSE OF ACTION AGAINST HAPAG – NEGLIGENCE

209.    The Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 4, and 115 through 208, inclusive, as if herein set forth at length.

210.    The Defendant HAPAG owed a duty to the Plaintiff to carry, bail, keep and care for, protect and deliver the Plaintiff's cargo in the same good order and condition as at the time said defendant first accepted custody and control of the goods.

211.    The Defendant HAPAG breached and were negligent in exercising their duty to carry, bail, keep and care for, protect and deliver the Plaintiff's cargo in the same good order and condition as at the time said defendant first accepted custody and control of the goods.

212.    As a direct and proximate result of the negligence by the Defendant HAPAG, the Plaintiff has suffered damages in the approximate amount of $101,879.24.

213.   By reason of the foregoing, the Plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded of Defendant HAPAG, which are presently estimated to be no less than $101,879.24.

**WHEREFORE,** Plaintiff prays:

1.   That process in due form of law may issue against Defendants citing them to appear and answer all and singular the matters aforesaid;

2.   That judgment may be entered as follows:

a.   In favor of Plaintiff Against Defendant MSC on the First, Second and Third Causes of Action against MSC for the amount of Plaintiff's damages of at least $105,657.72, and

b.   In favor of Plaintiff Against Defendant HAPAG on the First, Second and Third Causes of Action against HAPAG for the amount of Plaintiff's damages of at least $101,879.24;

together with interest, costs and the disbursements of this action; and

3.   That this Court grant to Plaintiff such other and further relief as may be just and proper.

Dated: New York, New York
       January 7, 2019
       404-10

CASEY & BARNETT, LLC
Attorneys for Plaintiff

By: _____
    James P. Krauzlis
    305 Broadway, Ste 1202
    New York, New York 10010
    (212) 286-0225